1  **LAW OFFICES OF LEO JAMES TERRELL**
   Leo James Terrell (SBN 149693)
2  8383 Wilshire Blvd., Suite 652
   Beverly Hills, California 90211
3  Phone: (323) 655-6909
   Fax: (323) 655-5104
4  civil1975@aol.com

5  Attorney for Plaintiffs,

6  Stanley Haveriland, Theodore Thomas,
   Horace Pennman, Julia Simmons,
7  Heather Presha, Sally Stein

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11 | STANLEY HAVERILAND, ET AL    ) CASE NO.: CV13-1410 CBM (JCGx)
12 |         Plaintiffs,          ) [related to case no. CV12-6618-CBM (JCGx)]
13 |   vs.                        ) **DECLARATION LEO JAMES TERRELL IN
                                  ) SUPPORT OF PLAINTIFFS' OPPOSITION TO
14 | THE CITY OF LOS ANGELES, ET  ) DEFENDANT'S MOTION FOR PROTECTIVE
   | AL,                          ) ORDER**
15 |                              )
   |         Defendants.          ) [DISCOVERY MATTER]
16 |                              )
   |                              ) [REQUEST FOR ORAL ARGUMENT]
17 |                              )
   |                              ) Date: Sept. 17, 2013
18 |                              ) Time: 2:00 p.m.
   |                              ) Ctrm.: 827-A
19 |                              )
   |                              ) Complaint filed: Feb. 26, 2013
20 |                              ) Non-Expert Discovery cutoff: Sept. 30, 2013
   |                              ) Pre-Trial Conf.: April 7, 2014
21 |_____) Trial: May 6, 2014

22

23

24

25

26

27

28

                                    1

## DECLARATION OF LEO JAMES TERRELL

I, Leo James Terrell hereby declare and state as follows:

1. I am an attorney at law, licensed to practice law before all Courts of the State of California. I am the attorney of record for Plaintiffs in the above-referenced matter.

2. I have personal knowledge of the within stated facts, and if called to testify, I could and would testify competently thereto.

3. On August 13, 2013, I received Defendant's Joint Stipulation regarding Defendant's Motion for Protective Order related to Depositions of City Officials ("Motion for Protective Order"). Defendant's Motion for Protective Order seeks to preclude the scheduled deposition of City Officials, such as Council President Herb Wesson and Mayor Eric Garcetti, based on the legislative privilege and high ranking officials. Prior thereto, on August 7, 2013, I filed a Motion to Continue the Sept. 30, 2013, Discovery Cut-off Date for a period of at least sixty (60) days or to a later date the Court deems appropriate pending resolution of Defendant's Motion for Protective Order. (**Docket no. 20.**)

4. No bases exist for the Defendant's Motion for Protective Order because it is premature as no question has yet been asked of the witnesses thereby triggering objectionable questions. The proper course of action for Defendant to take is to file a Motion for Protective Order only after scheduled depositions take place, objectionable questions are asked, and issues concerning the legislative privilege and the deponent's high ranking official status become ripe. As illustrated below, the Defendant's filing of a Motion for Protective Order is premature, without merit and is a strategy move designed to delay and prevent Plaintiffs from obtaining evidence necessary for preparing a Motion for Summary Judgment and Opposition to Defendant's contemplated Motion for Summary Judgment in light of the fast approaching discovery cut-off date of Sept. 30, 2013.

5. This lawsuit arises from the residents of Los Angeles City Council Districts ("CD") 8, 9, and 10 challenging the Defendant City's unlawful and unconstitutional 2012 Ordinance redrawing the City Council Districts 8, 9 and 10 based upon race and ethnicity. This lawsuit was then related to Lee, et al. vs. City of Los Angeles, case no. CV12-6618-CBM (JCGx), which also challenges the Defendant's unlawful and unconstitutional redrawing of district lines as it relates to the Korean

community. Though Lee and Haveriland were related, they are factually distinct.

6. Unlike Lee, direct evidence exists in Haveriland where officials from the Defendant articulated redrawing CD 8, 9 and 10 based on the race and ethnicity of the residents. For example, City Council President and Councilman for CD 10, Herb Wesson Jr., while speaking to a group of African-American ministers in July 2012, stated that the redrawing of the boundaries of CD 10 during the redistricting process enabled him to "protect the most important asset that we as black people have, and that's to make sure that a minimum of two of the council people will be black for the next 30 years." Another official stated that there are "too many Mexicans in that area."

7. On June 26, 2013, a scheduling conference was held in the Haveriland lawsuit before the Hon. Consuelo B. Marshall, Judge. Counsel for Defendant requested that all pretrial dates and the trial date in the Haveriland lawsuit be tracked to those in the related case of Lee. I express my opposition to said request and asked the Court to not track the dates in Haveriland to those in Lee because they are factually distinct. In particular, I expressed concern that tracking the discovery cut-off date in Haveriland to that in Lee may negatively impact my ability to conduct discovery given that the cases are factually distinct. The Court tracked all pretrial dates and the trial date in Haveriland to those in Lee. The Court, however, suggested that it will entertain a future motion to continue the discovery-cut if it later becomes necessary. The pretrial dates and trial date in Haveriland are currently set as follows:

| | |
|---|---|
| Fact Discovery Cut-off | Sept. 30, 2013 |
| Expert Discovery Cut-off | Nov. 15, 2013 |
| Last Day for Settlement Conf. | Nov. 30, 2013 |
| Last Day for Hearing Motions | Feb. 3, 2014 |
| Pretrial Conference | April 7, 2014 |
| Jury Trial | May 6, 2014 |

(**docket no. 18.**)

8. On July 25, 2013, I sent counsel for Defendant, Robin Johansen, via facsimile and US mail a letter and deposition notices for Herb Wesson, Eric Garcetti and Deron Williams scheduled for Sept. 9, 10, and 10, respectively. I informed Ms. Johansen that Defendant is given over a month's

notice of the depositions, that if she has a problem with the deposition dates to immediately contact my office, that I need to take these depositions before the Sept. 30, 2013, discovery cut-off date, and that I will send more deposition notices shortly. Attached hereto as **Exhibit 1** is a true a correct copy of the letter I sent to Ms. Johansen on July 25, 2013, and deposition notices for Herb Wesson, Eric Garcetti and Deron Williams.

9. I did not hear back from Defendant's counsel regarding the foregoing depositions until July 31, 2013, when counsel for Defendant, Tom Willis, sent me an email stating that he would get back to me within the next two days to confirm the deposition of Herb Wesson, Eric Garcetti and Deron Williams. Attached hereto as **Exhibit 2** is a true and correct copy of Mr. Willis' email dated July 31, 2013.

10. In response, I sent Mr. Willis a letter via fax and US mail on July 31, 2013, as a reminder that the discovery cut-off date is Sept. 30, 2013, and the deposition of Herb Wesson, Eric Garcetti and Deron Williams are crucial to my Motion for Summary Judgment and Opposition to Defendant's contemplated Motion for Summary Judgment. Thus, I stated that it is crucial that I receive confirmation of the depositions as early as possible to avoid scheduling conflicts. Attached hereto as **Exhibit 3** is a true and correct copy of the letter I sent Mr. Willis on July 31, 2013.

11. A week after receiving my deposition notice for Herb Wesson, Eric Garcetti and Deron Williams, Mr. Willis sent me a letter on August 1, 2013, stating that Defendant will file a Motion for Protective Order to preclude the scheduled deposition of Herb Wesson and Eric Garcetti because of the legislative privilege and they are high ranking officials. Mr. Willis stated that Judge Gandhi's May 9, 2013, minute order in the Lee lawsuit sets forth the parameters of the legislative privilege for the Haveriland lawsuit and supports the Defendant's Motion for Protective Order to preclude the deposition of Herb Wesson and Eric Garcetti. Attached hereto as **Exhibit 4** is a true and correct copy of Mr. Willis' letter dated August 1, 2013. Attached hereto as **Exhibit 5** is Magistrate Judge Gandhi's May 9, 2013, minute order in the Lee lawsuit.

12. In response, I sent Mr. Willis a letter on August 2, 2013, requesting a meet and confer regarding the deposition of Herb Wesson, Eric Garcetti and Deron Williams. Therein, I informed Mr. Willis that the Motion for Protective Order is nothing more than a strategy to delay and block the

deposition of Herb Wesson and Eric Garcetti because no question have yet been asked to trigger the legislative privilege. Furthermore, the May 9, 2013, minute order in the Lee lawsuit is an advisory opinion that does not apply in the Haveriland lawsuit because the two cases are factually distinct. I then informed Mr. Willis that I would also like to meet and confer regarding my Motion to Continue in light of his Motion for Protective Order regarding the deposition of Eric Garcetti and Herb Wesson. Attached hereto as **Exhibit 6** is a true and correct copy of the letter I sent Mr. Willis on August 2, 2013.

13. I have reviewed Magistrate Judge Gandhi's May 9, 2013, minute order in the Lee lawsuit, which discusses the legislative privilege. It is not applicable here for the following reasons. First, Judge Gandhi's May 9, 2013, minute order concerned the Lee Plaintiffs' motion to compel written discovery requests. Here, however, the Defendant's Motion for Protective Order concerns alleged objectionable questions at scheduled deposition that have not even taken place. Second, Magistrate Judge Gandhi's May 9, 2013, minute order was directed to the Defendant and the Lee Plaintiffs. The Haveriland Plaintiffs were not a party thereto. In fact, the Lee Plaintiffs and Defendant entered into an agreement to resolve the Lee Plaintiffs' Motion to Compel as noted in the Notice of Withdrawal of Joint Stipulation regarding Plaintiffs' Motion to Compel Discovery Pursuant to Parties Agreement. The Haveriland Plaintiffs were not a party to this agreement. The Haveriland Plaintiffs did not have an opportunity to be heard regarding the issues addressed by Magistrate Judge Gandhi's May 9, 2013, minute order. Thus, given the due process concerns and that the scope of Magistrate Judge Gandhi's May 9, 2013, minute order only addressed written discovery as oppose to questions that have yet been asked at scheduled depositions, Magistrate Judge Gandhi's May 9, 2013, minute order is inapplicable here to preclude the scheduled deposition of witnesses, such as Herb Wesson and Eric Garcetti. Attached hereto as **Exhibit 7** is a copy of the Notice of Withdrawal of Joint Stipulation regarding Plaintiffs' Motion to Compel Discovery Pursuant to Parties Agreement in the Lee Lawsuit.

14. On August 2, 2013, I sent Ms. Johansen a letter enclosed with deposition notices for Councilmenber Jose Huizar, Christopher Ellison, Economic Development Dept. Interim General Manger Jan Perry, Commissioner David Roberts, Commissioner Jerry Gaines and Commissioner Julie Downey for Sept. 3, 4, 5, 6, 17 and 18. Attached hereto as **Exhibit 8** is a true and correct copy of

1 | the letter I sent Ms. Johansen on August 2, 2013, and the deposition notices for Councilmenber Jose Huizar, Christopher Ellison, Economic Development Dept. Interim General Manger Jan Perry, Commissioner David Roberts, Commissioner Jerry Gaines and Commissioner Julie Downey.

15. On August 5, 2013, I met and conferred with Mr. Willis and Ms. Johansen regarding the scheduled deposition of Herb Wesson, Eric Garcetti and Deron Williams. During the meet and confer, counsel for the Defendant argued that the deposition of Eric Garcetti and Herb Wesson cannot go forward because Plaintiffs are seeking information protected by the legislative privilege and they are high ranking officials. Defendant's counsel then argued that Magistrate Judge Gandhi's minute order dated May 9, 2013 in the Lee lawsuit sets forth the parameters of the legislative privilege for the Haveriland lawsuit and the scheduled deposition of witnesses, such as Herb Wesson and Eric Garcetti. Defendant's counsel then stated that their bases for filing a Motion for Protective Order to preclude the deposition of Herb Wesson and Eric Garcetti are applicable to the deposition of other witnesses I noticed for deposition.

16. In response, I argued that Magistrate Judge Gandhi's May 9, 2013 minute order in the Lee lawsuit is inapplicable in the Haveriland lawsuit because it was an advisory opinion and concerned written discovery matters in the Lee lawsuit as opposed to questions that have yet been asked of witnesses at scheduled depositions in the Haveriland lawsuit. Furthermore, there are due process concerns since the Haveriland Plaintiffs were not parties in the Lee matter and were not given an opportunity to be heard when Magistrate Judge Gandhi issued the May 9, 2013, minute order. Furthermore, I argued that Defendant's Motion for Protective Order is premature because no questions have yet been asked of Garcetti and Wesson thereby triggering the legislative privilege. Furthermore, the fact that Eric Garcetti and Herb Wesson are high ranking officials does not preclude their deposition from going forward since Garcetti will be asked questions relating to his tenure as a councilmember and Wesson will be asked questions regarding public statements which he has personal knowledge of. I stated that the proper course of action would be to first proceed with the deposition of the witnesses and Defendant could file a Motion for Protective Order only after objectionable questions are asked. I then informed Defendant's counsel that I will oppose their Motion for

1  Protective Order and will file a Motion to Continue the discovery cut-off date in light of the
2  Defendant's Motion for Protective Order. I informed Defendant's counsel that their Motion for
3  Protective Order is a strategy move designed to prevent Plaintiffs from deposing witnesses in the
4  Haveriland lawsuit. The City stated that they would oppose my Motion to Continue the discovery cut-
5  off date.

6       17. During the August 5, 2013, meet and confer, Mr. Willis stated that it was more efficient
7  to file a Motion for Protective Order and have the Court to rule on issues pertaining to the legislative
8  privilege and the witnesses' high ranking official status even before the scheduled depositions take
9  place. In response, I stated that it is inefficient to file a Motion for Protective Order to preclude the
10 deposition of City Officials before it even takes place. I stated that the approach is inefficient because
11 if the Court hears the Defendant's Motion for Protective Order prior before the scheduled depositions
12 take place and issues a ruling on the scope of the legislative privilege and the witnesses' high ranking
13 official status, nothing prevents the Defendant from raising the same objections at the deposition of
14 the witnesses when objectionable questions are asked and then filing another Motion for Protective
15 Order. Therefore, I stated that the most efficient approach is to proceed with the scheduled
16 depositions, and only after objectionable questions are asked should Defendant file a Motion for
17 Protective Order.

18      18. It is also important to note that Defendant's counsel stated during the meet and confer
19 that they will challenge the admissibility of Herb Wesson's statement that he has insured a black
20 councilmenber for the next 30 years. Defendant's counsel further stated that the bases for said
21 statement is protected by the legislative privilege. I informed Defendant's counsel that I disagree with
22 their assessment of Herb Wesson's statement.

23      19. I believe the Defendant's filing of a Motion for Protective Order regarding the
24 scheduled deposition of witnesses, such as Herb Wesson and Eric Garcetti, is a strategy move to delay
25 the litigation, prevent the scheduled deposition of witnesses and make it difficult for Plaintiffs to obtain
26 evidence prior to the discovery cut-off of Sept. 30, 2013 so that Plaintiffs can prepare a Motion for
27 Summary Judgment and Opposition to Defendant's contemplated Motion for Summary Judgment.
28

1  I sent Defendant's counsel deposition notices for Herb Wesson, Eric Garcetti and Deron Williams on July 25, 2013, and provided them over a month's notice therefor. Defendant's counsel waited seven (7) days until August 1, 2013, to apprise me of their intent to file a Motion for Protective Order to preclude the scheduled deposition of witnesses Herb Wesson and Eric Garcetti. Their Motion for Protective Order is not ripe, is premature and has no merit in light of the fact that no question has yet been asked of the witnesses to even trigger the legislative privilege or objectionable question. Furthermore, Defendant's reliance on Magistrate Judge Gandhi's May 9, 2013, minute order in the Lee lawsuit as the basis for their Motion for Protective Order is misguided. Magistrate Judge Gandhi's May 9, 2013, minute order in the Lee lawsuit is inapplicable here since it concerned written discovery, the Haveriland Plaintiffs were not a party thereto and did not have an opportunity to be heard. In light of the Defendant's Motion for Protective Order to preclude the deposition of witnesses, such as Herb Wesson and Eric Garcetti, I find it necessary to file a Motion to Continue the discovery cut-off date of Sept. 30, 2013, for a period of at least 60 days or to a later date the Court deems appropriate pending resolution of Defendant's Motion for Protective Order, **docket no. 20**, to insure that Plaintiffs can obtain evidence necessary for their Motion for Summary Judgment and Opposition to Defendant's contemplated Motion for Summary Judgment.

20. On August 8, 2013, I received an email from Mr. Willis requesting another meet and confer regarding Plaintiff's Motion to Continue the Discovery Cut-off date. On August 13, 2013, Mr. Kim, Ms. Johansen, Mr. Willis, and I meet and confer again regarding Plaintiff's motion to continue the discovery cut-off date and Defendant's motion for protective order. Defendant proposed that the parties enter into a stipulation to continue the discovery cut-off date for a period of 60 days to resolve Plaintiff's pending Motion to Continue the Discovery Cut-off Date. In response, I stated that continuing the discovery cut-off date for 60 days will not resolve my pending Motion to Continue the Discovery Cut-off Date. I expressed concern that Defendant's Motion for Protective Order to preclude the scheduled deposition of witnesses, such as Herb Wesson, Eric Garcetti, and Jan Perry, may not be resolved within the Defendant's proposed discovery cut-off date. I stated that many variables regarding Defendant's Motion for Protective Order can negatively affect my ability to take

1  depositions within Defendant's proposed discovery cut-off date. For example, there is no guarantee
2  the Court will hear Defendant's Motion for Protective Order on shortened noticed. Furthermore, the
3  party prevailing on the Motion for Protective Order can file a Motion for Reconsideration or an
4  Interlocutory Appeal. The timing of when these issues are resolved cannot be gauged and continuing
5  the discovery cut-off date by an arbitrary 60 days will not adequately protect Plaintiffs' right to
6  conduct discovery so as to prepare a Motion for Summary Judgment and Opposition to Defendant's
7  Motion for Summary Judgment. I then stated that Plaintiff's pending Motion to Continue the
8  Discovery Cut-off Date takes into account these uncertainties by asking the Court to continue the
9  discovery cut-off date by 60 days or to a date the Court deems appropriate in light of the Defendant's
10 Motion for Protective Order. Thus, I stated that I will not take my Motion to Continue the Discovery
11 Cut-off Date off calendar so that the Court can be aware of the domino effect of Defendant's Motion
12 for Protective Order and based thereon continue the discovery cut-off date accordingly.
13 Attached hereto as **Exhibit 9** is a copy of a letter dated August 19, 2013, memorializing the parties
14 meet and confer on August 13, 2013. .

15      21.   During the August 13, 2013, meeting, I stated that I will not agree to sign the
16 stipulation to consolidate the Haveriland lawsuit with the Lee lawsuit if there is no statement in the
17 stipulation that clearly indicates that the two cases are factually distinct. I expressed my concern that
18 such a statement is required in order to prevent the Defendant from filing a Motion for Summary
19 Judgment that applies in a blanket form to Haveriland and Lee. **Exhibit 9**.

20      I declare under penalty of perjury under the laws of the United States that the foregoing is true
21 and correct.

22      Executed this 20TH day of August, 2013, at Beverly Hills, California

23

24      /s/ Leo James Terrell, Esq.
25           Leo James Terrell, Declarant

26

27

28

# PROOF OF SERVICE

I, the undersigned, declare under penalty of perjury that:

I am a citizen of the United States, over the age of 18, and not a party to the within cause of action. My business address is 201 Dolores Avenue, San Leandro, CA 94577.

On August 22, 2013, I served a true copy of the following document(s):

**Declaration of Leo James Terrell in Support of
Plaintiffs' Opposition to Defendant's
Motion for Protective Order**

on the following party(ies) in said action:

| | |
|---|---|
| John A. Karaczynski<br>Hyongsoon Kim<br>Akin Gump Strauss Hauer & Feld LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA  90067<br>Phone:  (310) 229-1000<br>Fax:  (310) 229-1001<br>Email:  jkaraczynski@akingump.com<br>         jkim@akingump.com<br>         kimh@akingump.com | *Attorneys for Plaintiffs in Lee v. City of Los Angeles* |
| Ekwan E. Rhow<br>Preston H. Lim<br>Bird, Marella, Boxer, Wolpert, Nessim,<br>  Drooks & Lincenberg, APC<br>1875 Century Park East, Suite 2300<br>Los Angeles, CA  90067<br>Phone:  (310) 201-2100<br>Fax:  (310) 201-2110<br>Email:  eer@birdmarella.com<br>         phl@birdmarella.com | *Attorneys for Plaintiffs in Lee v. City of Los Angeles* |

☐ **BY UNITED STATES MAIL:** By enclosing the document(s) in a sealed envelope or package addressed to the person(s) at the address above and

1

☐ depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid.

☐ placing the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, located in San Leandro, California, in a sealed envelope with postage fully prepaid.

☐ **BY OVERNIGHT DELIVERY:** By enclosing the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **BY MESSENGER SERVICE:** By placing the document(s) in an envelope or package addressed to the persons at the addresses listed and providing them to a professional messenger service for service.

☐ **BY FACSIMILE TRANSMISSION:** By faxing the document(s) to the persons at the fax numbers listed based on an agreement of the parties to accept service by fax transmission. No error was reported by the fax machine used. A copy of the fax transmission is maintained in our files.

☒ **BY EMAIL TRANSMISSION**: By emailing the document(s) to the persons at the email addresses listed based on a court order or an agreement of the parties to accept service by email. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on August 22, 2013, in San Leandro, California.

*/s/ Michael Narciso*
Michael Narciso

2